# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D20-239

_____

TRENTON NIVEK LAUWEREINS,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Duval County.
Meredith Charbula, Judge.

September 29, 2021


PER CURIAM.

In this direct appeal from his convictions and sentences for second-degree murder and shooting deadly missiles, Appellant seeks reversal on several grounds. We affirm in all respects and write only to address Appellant's claim that the trial court abused its discretion by prohibiting Appellant's mother from testifying on cross-examination that the victim, Appellant's father, taught the family never to call the police.

I

During its case-in-chief, the State presented evidence that Appellant was inside his bedroom at approximately 11:00 a.m. when he shot through the locked bedroom door and killed his

unarmed father, who was on the other side of the door. The medical examiner determined that Appellant's father bled to death from a gunshot wound to the abdomen. After the shooting, Appellant texted two friends and called his maternal grandparents. At approximately 12:30 p.m., Appellant's mother returned home and learned from Appellant that he shot his father. Appellant's mother testified that Appellant called 911 after she told him to call the police.

During cross-examination, the trial court sustained the State's hearsay objection when defense counsel attempted to elicit testimony from Appellant's mother that the victim taught the family never to call the police. However, during the defense's case, Appellant was allowed to testify that his father told him not to call for help after the shooting and had previously told him never to call the police. The jury returned a verdict finding Appellant guilty of second-degree murder and shooting deadly missiles as charged. This appeal followed.

## II

A hearsay statement of intent or plan is admissible under section 90.803(3), Florida Statutes, when offered to "[p]rove or explain acts of subsequent conduct of the declarant." *Penalver v. State*, 926 So. 2d 1118, 1127 (Fla. 2006). Statements of intent under this exception are only admissible to infer the future act of the declarant, not the future act of another person. *Brooks v. State*, 787 So. 2d 765, 770–71 (Fla. 2001). Thus, hearsay statements by the victim are not admissible to prove subsequent acts of the defendant. *Bailey v. State*, 419 So. 2d 721, 722 (Fla. 1st DCA 1982). "However, if the statement is offered for some purpose other than its truth, the statement is not hearsay and is generally admissible if relevant to a material issue in the case." *Penalver*, 926 So. 2d at 1132. Thus, if a statement is offered to show the effect on the listener rather than the truth of the statement, it is not hearsay. *Pitts v. State*, 227 So. 3d 674, 678 (Fla. 1st DCA 2017).

In this case, Appellant claims the trial court abused its discretion by prohibiting his mother from testifying on cross-examination that the victim taught the family never to call the police. He asserts that the victim's announced policy to never call

the police was not hearsay insofar as it was offered to show its effect on Appellant rather than its truth. He also asserts that the state opened the door to testimony regarding the victim's "no police" policy when it elicited testimony from Appellant's mother that she told Appellant to call 911. However, at that point in the trial, what effect, if any, the victim's purported "no police" policy had on Appellant's actions after the shooting was speculative and outside the scope of Appellant's mother's testimony on direct examination. Appellant could not use cross-examination as a vehicle for presenting defensive evidence. *See Steinhorst v. State*, 412 So. 2d 332, 337 (Fla. 1982) (explaining that a party cannot use cross-examination as a vehicle for presenting defensive evidence and that if the party wishes to elicit testimony on cross-examination that goes beyond what has been testified to in the direct examination, he must make the witness his own).

During the defense's case, Appellant was allowed to testify that the victim told him not to call for help after the shooting and had previously told him to never call the police. Once he testified, Appellant might have had grounds to call his mother as a defense witness to corroborate his testimony regarding the victim's policy never to call the police. *See Buchanan v. State*, 743 So. 2d 59, 61 (Fla. 2d DCA 1999) (holding that defendant should have been permitted to call a defense witness to testify that she had overheard the victim's former girlfriend ask defendant to remove her belongings from the victim's residence, which would have corroborated defendant's testimony that he did not have the intent to commit theft when he entered the victim's residence). Although Appellant did call his mother as a defense witness, he made no effort to elicit or proffer corroborating testimony regarding the victim's policy never to call the police. In light of the above, the trial court's restriction of Appellant's cross-examination of his mother during the State's case-in-chief did not constitute an abuse of discretion.

Even if there was error, the State argues that it was harmless beyond a reasonable doubt in light of the fact that Appellant was allowed to testify about the victim's "no police" policy. Appellant responds that the error is not harmless because his testimony might be viewed as self-serving by the jury and would carry less weight than the corroborating testimony of his mother, who did not

3

have the same motive to fabricate as Appellant. However, Appellant's mother was not a disinterested witness and arguably had a motive to help keep her only child from going to prison. Moreover, the corroborative value of the mother's testimony was undermined by the fact that she had Appellant call 911 despite the victim's "no police" policy. Finally, even if the victim had previously voiced a general "no police" policy, such a policy did not explain Appellant's failure to seek any other kind of assistance, especially medical assistance, for his father, who was shot and allowed to bleed to death. Under these circumstances, we conclude that there is no reasonable possibility that the absence of corroborating testimony from Appellant's mother regarding the victim's "no police" policy contributed to Appellant's conviction. *See State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986) ("The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.").

AFFIRMED.

JAY, M.K. THOMAS, and LONG, JJ., concur.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

Jason T. Forman of Law Offices of Jason T. Forman, P.A., Fort Lauderdale, for Appellant.

Ashley Moody, Attorney General, and Quentin Humphrey and Michael L. Schaub, Assistant Attorneys General, Tallahassee, for Appellee.

4